**CITY BANK FARMERS TRUST CO. v. PEDRICK.**

Civ. No. 32—415.

District Court, S. D. New York.

Jan. 3, 1947.

Mitchell, Capron, Marsh, Angulo & Cooney, of New York City (Charles An-gulo and Benjamin Nassau, both of New York City, of counsel), for plaintiff.

John F. X. McGohey, U. S. Atty., of New York City (John B. Creegan, of New York City, of counsel), for defendant.

BYERS, District Judge.

The question for decision is whether Section 863(b) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 863(b), applies to the bank account hereinafter described so that it is not to be deemed property within the United States, for estate taxation.

The statute reads:

"§ 863. Property without the United States

"The following items shall not, for the purpose of this subchapter (Basic Estate Tax), be deemed property within the United States:

"(a) * * * (Not involved).

"(b) *Bank deposits.* Any moneys deposited with any person carrying on the banking business, by or for a nonresident not a citizen of the United States who was not engaged in business in the United States at the time of his death. 53 Stat. 131."

All material facts are stipulated, except as to the banking technique and practice employed in this case, and as to that there is no dispute, so that the following statement of facts in brief narrative can be regarded as the findings:

Edwin Prestage, above named, died October 11, 1940, a British subject, residing and domiciled in England, and was not engaged in business in the United States.

His will, dated March 21, 1938, was duly probated on April 17, 1941, in England, and was thereafter recorded in the Surrogate's Court, New York County, and ancillary letters testamentary were duly issued by that court to the plaintiff, which duly qualified thereunder and has ever since continued as ancillary executor.

The bank account here involved had been maintained in his own name by the decedent in National City Bank of New York prior to July 31, 1939. On that day he created an inter-vivos trust, naming and designating the plaintiff as sole trustee.

The trust agreement is annexed to the stipulation, and no extended quotation therefrom is presently requisite.

It recites the assignment to the trustee of certain securities and "Cash: Seventy-nine thousand Dollars ($79,000.00)"

That sum was the amount of the said deposit in the National City Bank, and upon receipt thereof by the trustee, the latter deposited it with itself individually, in an account designated "City Bank Farmers Trust Company, Trustee Edwin Prestage u/a 7/31/39 with Edwin Prestage —No. 20050", and the said sum of $79,000 remained so deposited continuously until and including the date of the death of Edwin Prestage.

Incidentally, between July 31, 1939, and the latter date, items of income from the securities, totaling $1,377.02, were likewise so deposited, the said income being subject to distribution to the Settlor during his life, and then to his wife during her life.

The trust was revocable in whole or in part and was subject to amendment, the trustee's consent being had, and upon revocation the trust fund was payable to Prestage; the latter reserved full investment control in himself, to be exercised "by an instrument in writing delivered to the Trustee and unless otherwise directed by the Settlor in writing * * *, the Trustee shall retain the property (including, but not by way of limitation, cash) from time to time held by it hereunder".

Thus the $79,000 was required to be held by the trustee, uninvested, until Prestage should direct otherwise in writing.

The agreement by its terms was to be governed, construed and regulated by the laws of the State of New York.

Since as to the $79,000, at least, the trustee had no option but to maintain it in the form in which it was received, until the Settlor of the trust should instruct otherwise (and there is no assertion that he ever did), it is difficult, if not impossible, to understand the statement of the Commissioner, in rejecting the claim for refund (the presently contested item having been paid by reason of an adverse determination by the Commissioner based upon his audit of the original return), contained in the rejection of May 12, 1945: " * * * He (decedent) only had an interest in the income, had no ownership or interest in the corpus of said trust, and *had no control over it."* (Italics supplied.)

It must be apparent that he not only had control over it, but that he was the only one who did.

By reason of the rejection of the said claim, this suit was instituted against the Collector.

Seemingly this is a case of first impression, so far as reported decisions are concerned.

Certain propositions may be stated to clarify the course of adjudication:

(1) If this bank account had remained in the name of the Settlor Prestage, it would not have been subject to the Federal Estate Tax. This is so by the terms of the provision of the Internal Revenue Code which has been quoted.

(2) If the $79,000 National City Bank deposit had been cashed by this trustee, and the proceeds in the form of currency or specie had been retained in its vaults, earmarked as a portion of the trust property, it would have been taxable under Section 862(b), 26 U.S.C.A. Int.Rev. Code, § 862(b), which reads as follows:

"§ 862. Property within the United States

"For the purpose of this subchapter—

"(a) * * * (Not involved).

"(b) *Revocable transfers and transfers in contemplation of death.* Any property of which the decedent has made a transfer, by trust or otherwise, within the meaning of section 811(c) or (d), shall be deemed to be situated in the United States, if so situated either at the time of the transfer, or at the time of the decedent's death. 53 Stat. 131."

(3) If this trustee, as such, had deposited the said $79,000 and the said $1,377.02 in another similar banking institution, the point at issue probably would not have arisen.

It will be seen that it is necessary to consider whether there was such a change effected in the essential character of the

Prestage National City Bank account, by reason of the making of the trust agreement and its operation, as to render the first proposition inapplicable.

The instrument creates an inter-vivos trust, for the life of the Settlor and his wife if she survives, the income being payable to him so long as he lives, and then to her; upon the death of the survivor of those two, distribution of the principal is to be made according to the exercise of a power of appointment according to the will of such survivor; failing effectual appointment, distribution is required according to intestate succession under the laws of the State of New York.

The important provisions touching the control and management of the trust fund by the Settlor have been sufficiently explained to justify the statement that the instrument comprehended many attributes of agency vested in a corporate trustee for the convenience of the Settlor. When the posture of world affairs in July of 1939 is recalled, it is apparent why a British subject might wish to place the legal title to some of his property in a trustee, who would be subject, however, to his direction and control, and whose functions could be terminated at the pleasure of the creator of the trust. There can be no question that the trust estate, if invested in securities, would have been taxable for estate tax purposes, in its entirety, under 26 U.S.C.A. Int.Rev.Code, § 862(b), as property of which the decedent had made a transfer by revocable trust. The taxable status of such estates has been too frequently adjudicated to permit of discussion.

Whether the bank deposit should be deemed to be non-taxable would seem to depend upon whether its inclusion within the revocable trust should operate to remove it from the non-taxable status created by the statutory provision first quoted.

The legislative purpose reflected in this enactment is thus stated in the defendant's brief:

"Senate Report No. 275, 67th Congress, First Session, relating to the Internal Revenue Bill of 1921 (Cum.Bul.1939—1, Part 2, P. 199) states:

" 'Section 403(b)3: Under existing law the proceeds of insurance upon the life of a non resident decedent, where the insurer is a domestic company, is deemed property within the United States. This has been found to place American insurance companies at a disadvantage in competing with foreign companies, and, in order to remedy this situation, the proposed bill expressly states that such insurance shall not be regarded as property situated in the United States. A like provision is made respecting moneys deposited with any person carrying on a banking business, by or for a nonresident decedent who is not engaged in business in the United States at the time of his death.' "

The defendant argues that an American bank would not be under any disadvantage as compared with a foreign bank in this case, since the deposit, as has been stated, was already in the National City Bank at the time of the transfer, July 31, 1939, and therefore should be held to fall within the provision of Section 862(b).

The difficulty with that argument is that Section 863(b) does not in terms limit its operation to moneys which had been deposited in foreign banks immediately prior to being "deposited with any person carrying on the banking business, by or for a nonresident * * *".

Since the legislative purpose was to favor American banking institutions, the inquiry then must turn to the question of whether they are to be any the less favored, where the deposit is made pursuant to the terms of an inter-vivos trust, than would be the case of a deposit made by an individual. I can see no difference, so far as the maintenance of the competitive position of banks is concerned.

Nor can it be perceived that a bank deposit is transmuted into something else because it constitutes one element of a trust estate. This would seem to be true, even though the creator of the trust had not retained the complete power of control over that deposit which is revealed in this case; such retention, however, adds emphasis to the preservation of its essential character by a bank deposit, even after it passed into the trust. To hold otherwise would

mean that the inclusion of the bank account in the trust would subject the decedent's estate to a greater tax than could have been assessed, had the deposit been retained by him outside the trust, a result which is incongruous in view of the many decisions which explain why a conveyance in trust is disregarded for estate tax purposes, where the powers of revocation and control are retained by the Settlor.

It remains to consider whether the deposit by the trustee with itself, instead of in another bank, operated to erase the immunity from taxable status which would otherwise attach.

The proof is that the ordinary relationship of debtor and creditor between the plaintiff Trust Company and the trustee resulted from the deposit in question, thus:

The New York State Banking Law, Section 100-b, Subdivision 1, reads: "1. Investments. All investments of money received by any trust company as * * * trustee of a trust of any kind, * * *, shall be at its sole risk, and for all losses of such money the capital stock, property and effects of the trust company shall be absolutely liable, unless the investments are such as * * * are permitted in and by the instrument or words creating or defining the trust. * * * Any moneys of any such estate or fund awaiting investment or distribution may be held on deposit by such trust company in its own name, subject to the provisions of subdivision four* of this section; provided that appropriate entries showing the share or interest of each such estate or fund in the moneys so held on deposit shall, at all times, appear upon the records of such trust company."

█ The deposit here made therefore was legally authorized, and the resulting relationship was that of debtor in the banking department to creditor in the trust department. See Matter of Howell's Estate, 237 App.Div. 56, 260 N.Y.S. 510.

This deposit was reported to the Federal Reserve Bank (see Exhibit 2) pursuant to the instructions embodied in Exhibit 3.

It is important to remember that the plaintiff is a New York trust company which functions pursuant to the Banking Law of New York. Subdivision 3 of Section 100-b creates a priority in the payment of fiduciary funds, in the event of liquidation, thus: "3. Preference. If dissolved by the legislature or the court, or otherwise, or liquidated by the superintendent or otherwise, the debts from any trust company as guardian, trustee, executor, administrator, committee or depositary, shall be entitled to priority of payment from the assets of such trust company on an equality with any other priority given by this chapter."

The foregoing was given effect in Matter of Arcadia Trust Co., 240 App.Div. 166, 268 N.Y.S. 759, in which priority in the payment on liquidation was confirmed, of deposits made in the banking department of a trust company, by itself acting as trustee under "personal" trusts, i. e., non-testamentary trusts.

National Banks are governed by the statute found in 12 U.S.C.A. § 86 et seq.

Section 248, dealing with the powers of the Board of Governors of the Federal Reserve System, confers the authority in subsection (k) to grant the right to act as trustee or other fiduciary; it reads in part: "Funds deposited or held in trust by the bank awaiting investment shall be carried in a separate account and shall not be used by the bank in the conduct of its business unless it shall first set aside in the trust department United States bonds or other securities approved by the Board of Governors of the Federal Reserve System."

By the terms of Title 12 of Code of Federal Regulations, § 206.9, this subject is covered in detail, and it is therein provided that the said securities shall have a market value equal to the amount of the trust funds so used.

That regulation would apply to the case of a deposit by a National Bank as trustee, in its own banking department.

State banks which are members of the system are subject to the rule:

Section 208.6(b) (3)

"(3) If funds held by such bank as fiduciary are deposited in its commercial or

---

* Touching interest upon uninvested funds.

savings department or otherwise used in the conduct of its business, it shall deposit with its trust department security in the same manner and to the same extent as is required of national banks exercising fiduciary powers."

To the foregoing there is appended a footnote, on page 940 of the code, reading as follows: "In cases where trust funds are fully protected by a statutory preference in all of the assets of the bank over its general creditors, the Board may waive compliance with this condition. However, if compliance be waived in any case, the Board expressly reserves the right to require compliance with the condition if, at any time, it feels that such trust funds are not adequately protected."

This plaintiff was advised by the Federal Reserve Bank of New York under date of July 23, 1935, that compliance with the regulation last above quoted was waived, subject to the right to require compliance "if at any time the Board feels that trust funds deposited in your banking department are not afforded adequate protection". (See copy of letter attached to plaintiff's reply brief.)

This seems to mean that competent banking authority regards the priority attaching to fiduciary funds on liquidation according to the New York statute, as securing an equivalent protection to the reserve requirement under the Federal statute, unless special circumstance to the contrary is shown. Applied to the instant facts, this means that the deposit of the $79,000 by the trustee with its own banking department was not only proper under the law invoked by the parties to this trust agreement, but it was also sanctioned under the statute governing State banks becoming members of the Federal Reserve System. If this is a valid conclusion, there seems to be no escape from the further conclusion that this deposit never lost its character as such; it never was money as the defendant's briefs refer to it four times; it was a bank deposit when taken over by the trustee; and it was a bank deposit when the trustee became the creditor of its own banking department under the circumstances related, and it was a bank deposit when the decedent died, in effect made *by* him (i. e. under his control and pursuant to his direction) or it was made *for* him by his trustee who for this purpose (in view of the provisions of the agreement) and to this extent, may be deemed to have been his agent.

If Fesenmeyer v. Salt Springs National Bank, 2 Cir., 92 F.2d 599, is cited as an authority to the contrary, I do not so read it. The decision is that the balance on deposit by the bank in liquidation was held as a fiduciary fund; thus on page 601: "It (the bank) dealt with it (the fund) at all times through its trust department." In consequence, resort to security held by the State Superintendent under the New York State Banking Law was held to be proper, pari passu with others similarly situated.

The factual difference between that case and this would seem to be obvious.

It results therefore that the $79,-000 was a bank deposit not taxable for estate tax purposes, any more than it would have been, had the decedent retained it in his own name. It did not become money held by the trustee as in proposition (2) above stated.

Since the item of $1,377.02 represented income received by the trustee prior to the death of the decedent, and deposited by it in the same account as the $79,000, it was equally subject to the control of the Settlor, and is not, therefore, to be distinguished therefrom for the purposes of this case.

Judgment ordered for plaintiff, to be settled on notice.